IN THE SUPREME COURT OF THE STATE OF DELAWARE

JAHLIL LEWIS, §
§ No. 590, 2015
Defendant Below, §
Appellant, §
§ Court Below:
v. §
§ Superior Court of the
STATE OF DELAWARE, § State of Delaware
§
§ Cr. I.D. No. 1402001812
Plaintiff Below, §
Appellee. §

Submitted: June 15, 2016
Decided: June 16, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

## O R D E R

This 16th day of June 2016, upon consideration of the appellant's brief, the State of Delaware's response, and the record below, it appears to the Court that:

(1)    The appellant, Jahlil Lewis ("Lewis"), filed this appeal from the Superior Court's June 30, 2015 Order. Lewis raises one argument on appeal. After a bench trial, the Superior Court acquitted Lewis of Home Invasion, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Robbery First Degree, and Tampering with a Witness. However, the Superior Court convicted Lewis of Aggravated Menacing as a lesser-included offense of Robbery First Degree, PFDCF, Conspiracy Second Degree, Possession of a Firearm by a Person Prohibited, and Possession of Ammunition by a Person Prohibited. Lewis was sentenced to 23 years at Level V, suspended after eight

1

years for decreasing levels of supervision. He argues on appeal that the Superior Court erred by convicting him of Aggravated Menacing and PFDCF. We disagree and AFFIRM.

(2) On February 3, 2014, Lewis and Kina Madric ("Madric") entered Angela Gooden's ("Gooden") apartment in Wilmington, Delaware while carrying firearms.[1] Gooden's neighbor heard "a scuffle -- or a noise" and a voice say to Gooden: "Where is the money?" The neighbor believed that "Gooden [wa]s being robbed" and called 9-1-1. Corporal Ryan Jordan ("Corporal Jordan"), Corporal Jose Santana ("Corporal Santana"), and Officer Ashton Holden responded to the call. When Corporals Jordan and Santana knocked on Gooden's apartment door, they received no response. Corporal Jordan testified that, after the officers knocked a second time, Gooden "c[a]me running out of the . . . apartment appearing scared. Her eyes were bulging wide open, she was panting[,] and she appeared terrified at the time." He testified further that, upon emerging from the apartment, Gooden exclaimed: "They are in there and they have guns." After the officers announced themselves again and stated that they intended to release a K-9 officer, Lewis and Madric surrendered. The officers then searched the apartment, discovering two firearms.

(3) During defense counsel's closing argument at trial, the Superior Court raised *sua sponte* the possibility that Lewis could be convicted of Aggravated Menacing as a lesser-included offense of Robbery First Degree, stating: "I suppose one of the

---

[1] At trial, Madric testified that she and Lewis intended to commit "[a] robbery" at Gooden's apartment on February 3, 2014.

2

things we may need to talk about is whether there's a possibility of the lesser-included [A]ggravated [M]enacing." Before proceeding with his summation, defense counsel responded: "Yes, Your Honor."

(4) During the State's rebuttal closing argument, the Superior Court asked whether the State thought that "the evidence presented supports a lesser-included [A]ggravated [M]enacing, assuming that defendant were to be found not guilty of the robbery or attempted robbery?" The prosecutor acknowledged that she believed that the evidence supported consideration of Aggravated Menacing. To confirm the State's belief, the court inquired: "Yes or no, is the State asking the court to consider a lesser-included offense?" The prosecutor responded: "Yes, Your Honor, if the [Superior] Court doesn't find for robbery, the State would ask the court to consider the lesser-included offense of [A]ggravated [M]enacing."[2]

(5) After the State completed its rebuttal closing argument, the Superior Court asked defense counsel the following question: "[T]he State has asked the court to consider a lesser-included offense of [A]ggravated [M]enacing and that probably

---

[2] After the prosecutor confirmed that the State wished for the Superior Court to consider the lesser-included offense of Aggravated Menacing, the following exchange between the court and the prosecutor occurred:

> The Court: So, in effect, if we were in front of a jury you would, the State would be asking for a charge on the LIO?
>
> Prosecutor: Yes, Your Honor. And again, I guess thinking out loud, I don't know necessarily if I would have been asking for that, had this conversation not come up during the closing, necessarily, because again, the State would argue very strongly that the evidence, if it supports [A]ggravated [M]enacing, that on top of it, supports that they were there for the purposes of committing a caper, as Miss Madric said, which is a robbery for money.

eliminates the party autonomy argument. That having been said, nevertheless, what is defendant's position on the LIO?" Defense counsel responded: "Yes, Your Honor could find an LIO."[3]

(6)     On appeal, Lewis requests that his convictions of Aggravated Menacing and PFDCF be vacated. He contends that the Superior Court improperly initiated a discussion of the lesser-included offense of Aggravated Menacing during summations. Lewis also relies upon this Court's decision in *Ramsey v. State*[4] for two assertions. *First*, he urges that the parties did not "actually or explicitly" request consideration of the lesser-included offense of Aggravating Menacing. *Second*, Lewis argues that it was error for the trial court to fail to conduct a conference to permit the parties the opportunity to request consideration of the lesser-included offense of Aggravated Menacing before closing statements.

(7)     Because Lewis raises the argument that it was improper for the Superior Court to *sua sponte* initiate consideration of the lesser-included offense of Aggravated Menacing for the first time on appeal, we review for plain error.[5] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial

---

[3] Defense counsel continued: "Your Honor could[,] and I don't want to press my luck, but Your Honor could actually find an LIO of just [M]enacing. You could say she had separate knowledge that they had guns. They were asking her for money, she felt threatened by that, but there's no -- there was no presentation of or display of the firearm at the time that there was the request for money. . . . But in any event, that's a long-winded answer of saying I think it could even go down to a [M]enacing if the court found that there was not a sufficient beyond a reasonable doubt linkage between the firearm and a fear of imminent risk."

[4] 996 A.2d 782 (Del. 2010).

[5] *See* DEL. SUPR. CT. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

4

rights as to jeopardize the fairness and integrity of the trial process."[6]  Further, "plain error is limited to material defects which are apparent on the face of the record[,] which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[7]

(8)     Delaware follows the "party autonomy" approach to lesser-included offenses.[8]  Under this approach, "the burden is initially on the parties, rather than the trial judge, to determine whether an instruction on a lesser-included offense should be considered as an option for the jury."[9]  "By its very nature, the 'party autonomy' rule is most relevant to jury trials.  But, the rationale for that rule is also applicable to bench trials."[10]  Further, the rationale underlying the party autonomy rule "mandates that a trial court—whether or not it is sitting as a trier-of-fact—defer to the parties' decision to address, or to refrain from addressing, a lesser-included offense.  That is because it is trial counsel 'who determine trial tactics and presumably act in accordance with a formulated strategy.'"[11]  Accordingly, this Court has held before that, "in a bench trial, the trial judge

---

[6] *Dougherty v. State*, 21 A.3d 1, 3 (Del. 2011) (citation omitted) (internal quotation marks omitted).

[7] *Id.* (citation omitted) (internal quotation marks omitted).

[8] *See State v. Cox*, 851 A.2d 1269, 1273-74 (Del. 2003).

[9] *State v. Brower*, 971 A.2d 102, 107 (Del. 2009) (citing *Cox*, 851 A.2d at 1273).

[10] *Ramsey*, 996 A.2d at 785.

[11] *Id.* (quoting *Chao v. State*, 604 A.2d 1351, 1358 (Del. 1992)); *see also id.* (quoting *Cox*, 851 A.2d at 1274)  ("The party autonomy approach allows the defendant to exercise or waive the full benefits of reasonable doubt that [the consideration of a] lesser[-]included offense . . . may promote, while also allowing the prosecution to seek the proper punishment for a criminal act that [the trial court] may not believe rises to the level of the original offense charged." (alterations in original and added) (internal quotation marks omitted)).

should not consider adjudicating an uncharged, lesser-included offense unless specifically requested by a party to do so."[12]

(9)     In *Ramsey*, the defendant and three co-conspirators robbed a pizzeria. The defendant, accompanied by another with a weapon drawn, demanded money. An employee with his hands in the air stood near the register as the owner of the restaurant opened it and the defendant "grabbed cash out of it." The defendant did not take any personal property from the employee. The defendant was indicted on First Degree Robbery of the employee, among other charges. After the Superior Court announced its factual findings at the defendant's bench trial, the court suggested that the employee was the victim of an "attempted robbery." The State, however, never sought a conviction for Attempted First Degree Robbery of the employee.[13] Because the Superior Court determined that it would have raised the issue of Attempted First Degree Robbery at the prayer conference had the case been tried before a jury and that it would have given the jury a lesser-included offense instruction, the court found the defendant guilty of Attempted First Degree Robbery of the employee. On appeal, this Court reversed, in view of the fact that "neither side explicitly or affirmatively requested the Superior Court *actually* to consider that lesser-included offense."[14] We stated that "[t]o prevent the occurrence of similar errors in future bench trials, the Superior Court should hold a

---

[12] *Id.* (footnote omitted).
[13] In *Ramsey*, defense counsel referred to the lesser-included offense of Attempted First Degree Robbery during his closing statement, stating that if nothing was taken from the employee, then the defendant could be found guilty of Attempted First Degree Robbery, "just as Your Honor was saying." *Id.* at 785.
[14] *Id.* (emphasis in original).

conference before the parties make their closing statements in such trials, where the parties will be afforded the opportunity to request that the trial judge consider relevant lesser-included offenses."[15]

(10)    Here, the possibility of a lesser-included offense was addressed during closing arguments.  The Superior Court initiated consideration of the lesser-included offense of Aggravated Menacing during defense counsel's summation and defense counsel agreed that it should be addressed.  Unlike in *Ramsey*, the State, during its rebuttal closing argument in this case, affirmatively requested that the court actually consider the lesser-included offense of Aggravated Menacing.  We adhere to our decisions in *Ramsey*, *State v. Brower*,[16] and *State v. Cox*.[17]  While the best practice remains for the parties to initiate consideration of lesser-included offenses before closing arguments, we find no plain error under the facts presented here.  Albeit at the Superior Court's suggestion, the State requested that the trial court actually consider the lesser-included offense of Aggravated Menacing and the defense did not object.  Defense counsel agreed that the Superior Court could find the lesser-included offense, even suggesting that the court could find Menacing.  Thus, during closing arguments, both the prosecutor and defense counsel argued in favor of the trial judge considering Aggravated Menacing as a lesser-included offense of Robbery First Degree.  We conclude, therefore,

---

[15] *Id.* (citing SUPER. CT. R. 30 (providing that "[a]t the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests")).

[16] 971 A.2d 102 (Del. 2009).

[17] 851 A.2d 1269 (Del. 2003).

that the trial court properly considered the lesser-included offense of Aggravated Menacing.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

/s/ *Karen L. Valihura*
Justice